**Opinion filed May 14, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00352-CV

_____

## IN THE INTEREST OF G.S.S. AND S.D.S., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11645-CX**

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father to their children, G.S.S. and S.D.S.[1]  Only the father appealed.  In three issues, Appellant challenges the trial court's findings that: (1) termination of his parental rights is in the children's best interest; (2) the Department of Family and Protective Services (the Department) made reasonable efforts to return the children to the parents; and (3) Appellant was not entitled to court-appointed counsel.  *See* TEX. FAM. CODE ANN. § 107.013 (West 2019),

---

[1]We use initials to refer to the children.  *See* TEX. R. APP. P. 9.8(b).

§ 161.001(b) (West Supp. 2025).  We affirm in part, and we reverse and remand in part.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  Fam. § 161.001(b).  To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the child.  *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007.

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) knowingly engaged in criminal conduct that has resulted in Appellant's conviction, imprisonment, and inability to care for the children for not less than two years from the date that the Department filed its petition.  *See id.* § 161.001(b)(1)(D), (E), (P).[2]  The trial court further found that termination of Appellant's parental rights was in the children's best interest.  *See id.* § 161.001(b)(2).

_____

[2]We note that the legislature has amended Section 161.001(b)(1), which resulted in the renumbering of several provisions.  *See* Act of May 16, 2025, 89th Leg. R.S. ch. 211, § 2, 2025 Tex. Sess. Law Serv. 573, 574–75.  For instance, and as relevant to the trial court's findings in this case, former subsection (Q) is now subsection (P).  The amendments only apply to suits affecting the parent-child relationship that are pending on or after the effective date of the amendments; thus, we apply the law in effect at the time the suit was pending below.  *Id.* § 3.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley*

factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parents. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

On the night of September 29, 2024, the mother called the police to report that Appellant threatened and chased her with a hatchet while she was holding two-year-old S.D.S. Appellant, who was on concurrent terms of deferred adjudication community supervision for committing aggravated assault in 2014 and 2015, was arrested for aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02 (West 2026). The Department had received information earlier that day that the mother was using methamphetamine and leaving S.D.S. home unsupervised, and that Appellant "was receiving mental health treatment due to military trauma."

Department investigator Victoria Melissa Mason interviewed seven-year-old G.S.S. in the days following Appellant's arrest. G.S.S. witnessed Appellant "trying

5

to hurt his mom" with an "ax" and "believed his dad was going to try and kill his mom." He also described Appellant "being drunk and throwing things," and "causing him pain by grabbing him by his neck, arm, and head." The mother told Mason that Appellant had "a lot of mental health problems," "a traumatic brain injury," and an alcohol addiction; the mother told Mason that Appellant "was combative and raging mad more often than not." Appellant went to "rehab two to three times a year," most recently "about a month prior to" the Department's involvement. The mother recounted that Appellant once drove his car into the side of the home while intoxicated, and "[threw] things when he [was] angry." Mason noticed damage to the home where Appellant crashed into it. The mother then said that she did not intend to keep the children away from Appellant. "[S]he knew that it was probably better for them" to do so, but nevertheless "believed that they needed their father."

Mason also met with Appellant while he was confined in the Taylor County Jail. He admitted that he was an alcoholic, and that the mother "us[ed] methamphetamine regularly." Appellant told Mason that, the mother "went off with her . . . meth head friends" and left S.D.S. home alone. Due to Appellant's continued confinement and the mother's refusal to participate in services, the Department sought and was granted temporary managing conservatorship of the children on October 18, 2024. The children were drug tested three days after removal, the results of which were positive for methamphetamine. The mother also tested positive for methamphetamine. In December 2024, Appellant was adjudicated guilty of the aggravated assaults that he committed in 2014 and 2015, and he was sentenced to concurrent four-year terms of imprisonment in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). Appellant was drug tested in December 2024 while incarcerated, and although the

6

urinalysis was negative, Appellant tested positive for methamphetamine on the hair follicle test that was administered on the same date.

Appellant's permanency case manager visited him monthly while he was confined in the Taylor County Jail. Following his transfer to TDCJ, he maintained written contact with the Department until about August 2025. While in prison, Appellant completed "parenting packet modules" and a psychological evaluation, and he had services available through TDCJ for parenting, anger management, and cognitive awareness.

As set forth in greater detail below, Appellant filed a request for court-appointed counsel in November 2024. Without a hearing, the trial court denied Appellant's request on the same day that the trial court received it. Appellant was incarcerated in TDCJ for the pendency of the proceedings in the trial court. Appellant did not attend any subsequent hearings either in person or by remote means. Thereafter, notices from the trial court and the other parties were served on Appellant via a Gmail e-mail account. On September 17, 2025, the Department filed a certificate of last known address that indicated that Appellant was incarcerated in the TDCJ Sanchez Unit in El Paso. On September 22, 2025, an attorney for the Department issued a notice of trial setting for October 14, 2025 directed to Appellant at the Sanchez Unit. A "tracking" statement from the United States Postal Service indicates that the notice of trial setting was delivered to the Sanchez Unit on September 30, 2025.

The trial court conducted the final termination hearing on October 14, 2025. Appellant, who was still incarcerated, was neither present nor represented by counsel at trial. Appellant did not participate at trial in any manner, remote or otherwise. The Department presented the testimony of three witnesses: Mason, permanency case manager Jessica Mowrer, and the children's foster mother. Mason attested to

7

Appellant's criminal history as well as his history with the Department. She testified that, in 2012, Appellant was allegedly "huffing paint while caring for his [older] child." Another investigation was opened in 2022 after it was reported that Appellant was watching the children while drinking alcohol excessively. Mason testified that, in 2024, S.D.S. "had gotten out of the residence and was w[a]ndering the neighborhood."

The children were placed in a foster home in May 2025. Mowrer observed that the children "have a very loving, caring, [and] sweet relationship" with their foster parents, who "speak [to] them with nothing but kindness." The foster mother confirmed that, in the event that the parents' rights are terminated, she and her husband want to adopt G.S.S. and S.D.S.

At the conclusion of the hearing, the trial court terminated Appellant's parental rights pursuant to Section 161.001(b)(1)(D), (E), and (P), and found termination to be in the best interest of the children. *See* FAM. § 161.001(b)(1)(D), (E), (P), (b)(2). The trial court signed its order of termination on October 30, 2025. Appellant filed a pro se notice of appeal on November 19, 2025. The trial court wrote to Appellant on the same date with a letter asking him if he wanted to have court-appointed counsel for appeal. Upon receipt of a letter from Appellant seeking court-appointed counsel, the trial court conducted a hearing on December 4, 2025 with Appellant appearing via Zoom. At the conclusion of the hearing, the trial court determined that Appellant was indigent and it appointed counsel for his appeal.

This appeal followed.

*Best Interest of the Children*

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a

much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of a child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Appellant does not contest the trial court's findings that he endangered the children as set forth in Sections 161.001(b)(1)(D) and (E), or that his criminal convictions and imprisonment resulted in his inability to care for the children pursuant to Section 161.001(b)(1)(P). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, the evidence of Appellant's criminal conduct and endangerment of the children could be considered by the factfinder in determining whether termination was in the children's best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *In re C.J.O.*, 325 S.W.3d at 266.

Evidence of domestic violence in the home is particularly relevant to the emotional and physical danger to the children now and in the future, parental abilities, and stability of the home. *In re R.J.*, 579 S.W.3d 97, 116–17 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). Here, Appellant committed a violent criminal offense against the mother in the presence of the children. *In re O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.) ("Physical violence in the home leads to an unstable and unpredictable environment for children."). G.S.S. witnessed Appellant, who was intoxicated, chase the mother with a hatchet "acting like he was going to kill [her]." More troubling still, the mother was holding S.D.S. during the aggravated assault. *See In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[A]busive and violent criminal conduct by a parent can also produce an environment that endangers a child's well-being.").

Nor was this a single incident of violent conduct— G.S.S. described Appellant "grabbing him by his neck, arm, and head," and "throwing things" while intoxicated. And Appellant was on deferred adjudication for committing two aggravated assaults nearly ten years prior. In 2015, Appellant cut the mother's hands and leg with a

knife. In 2014, Appellant wielded a knife against a different victim and threatened to cut her throat. *See In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied) ("[E]vidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being."). Appellant pleaded "true" to the allegations in the State's motions to adjudicate, which included the aggravated-assault offense against the mother in September 2024, multiple positive drug tests in 2021 and 2022, and a positive alcohol test in December 2022. Given Appellant's violent conduct that endangered the children and his felony convictions, the trial court was permitted to infer that Appellant would continue his abusive behavior in the future, which supports its best interest findings. *R.J.*, 579 S.W.3d at 116–17; *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future.").

The evidence further established that, despite Appellant's knowledge of the mother's frequent methamphetamine use, he left the children in her care and failed to protect them from exposure to drugs. *See In re A.B.G.*, No. 01-24-00648-CV, 2025 WL 567565, at *23 (Tex. App.—Houston [1st Dist.] Feb. 21, 2025, no pet.) (mem. op.) (best interest finding supported by evidence that the father, aware of the mother's drug use, permitted the mother to leave with the child); *In re E.R.*, No. 07-20-00276-CV, 2021 WL 359781, at *5 (Tex. App.—Amarillo Feb. 2, 2021, no pet.) (mem. op.) (father's failure to protect his children from the mother's drug use in their presence endangered the children's physical well-being). In addition to leaving the children in the care of a known drug user, Appellant had his own history of drug and alcohol addiction. "[P]arental substance abuse reflects poor judgment and may be a factor to consider in determining a child's best interest." *R.J.*, 579 S.W.3d at 117

(considering the father's excessive drinking and domestic violence in best interest analysis); *see also In re A.A.*, No. 10-24-00084-CV, 2024 WL 3717427, at *2–3 (Tex. App.—Waco Aug. 8, 2024, pet. denied) (mem. op.) (best interest finding supported by evidence of the mother's excessive drinking and refusal to acknowledge her "serious problem with alcohol").  Even at age seven, G.S.S. associated Appellant's violent behavior to occasions when he was "drunk." According to the mother, Appellant continued drinking excessively notwithstanding repeated admissions to inpatient treatment.

The trial court could likewise consider the evidence of Appellant's mental health issues and his history with the Department.  *See In re U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) ("In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.").  Mental illness, though not an independent basis to terminate the parent-child relationship, has bearing on the child's best interest if it "allows the parent to engage in conduct that endangers the physical or emotional well-being of the child."  *In re E.G.*, 643 S.W.3d 236, 253 (Tex. App.—Amarillo 2022, no pet.) (quoting *In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.)).  Appellant's mental health issues, exacerbated by his alcohol abuse, coincided with his endangering conduct.  *See id.* The record therefore discloses several circumstances from which the trial court could have reasonably discerned a "pattern of conduct that is inimical to the very idea of child-rearing." *J.F.-G.*, 627 S.W.3d at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72.  Such conduct indicates that the existing parent-child relationship is not a proper one, which supports the trial court's best interest findings. *See Holley*, 544 S.W.2d at 371–72.

It is axiomatic that "[s]tability and permanence are paramount in the upbringing of children." *In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). In stark contrast to the tumultuous home environment created by Appellant, the children's foster parents provided a safe, drug-free nurturing home. *J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best interest finding). The children have bonded with their foster parents, who intend to adopt them. *See In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.) (factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent); *see also N.J.H.*, 575 S.W.3d at 834 (evidence showing that a young child had bonded with foster family supported trial court's best interest finding). Such evidence permitted the rational inference that relinquishing the children to Appellant's care would subject them to a life of uncertainty and instability. *See J.W.*, 645 S.W.3d at 742; *In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Upon considering Appellant's acts and omissions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's criminal history, and his history of substance abuse, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's first issue on appeal.

*Specificity of Findings Required by Section 161.001(f) and (g)*

In his second issue, Appellant challenges the trial court's finding that the Department made reasonable efforts to return the children to the parents prior to the commencement of the final termination hearing.

Relevant to this case, the parent-child relationship may not be terminated unless:

> [T]he [trial] court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that . . . the [D]epartment made reasonable efforts to return the child[ren] to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent.

FAM. § 161.001(f)(1). Pursuant to Section 161.001(g), the trial court's order must "describ[e] with specificity the reasonable efforts the [D]epartment made to return the child[ren]" to their home. *Id.* § 161.001(g). Applying the prevailing judicial interpretation of similar language elsewhere in Section 161.001, we have previously concluded that, ultimately, "the issue is whether the Department made reasonable efforts, not ideal efforts." *In re M.N.M.*, 708 S.W.3d 321, 329 (Tex. App.—Eastland 2025, pet. denied) (quoting *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *2 (Tex. App.—San Antonio Aug. 26, 2020, no pet.) (mem. op.)). For example, the Department's implementation of a family service plan is generally considered a reasonable effort to return the child to the parent. *Id.* (collecting cases).

The trial court, in a separate section of the order terminating Appellant's and the mother's parental rights, found by clear and convincing evidence that the Department made reasonable efforts to return G.S.S. and S.D.S. to the parents, but that a continuing danger remained in the home that prevented the return of the children. In compliance with Section 161.001(g), the trial court specifically found that the Department:

(1) "provided services," "paid for services," or "referred services for the parents to complete";

(2) "attempted to place the children with relatives" and "did place the children with relatives" during the case;

(3) "created family plans of service for the parents," which it found to be "narrowly tailored to address any specific issues identified";

(4) "attempted to maintain contact with the parents"; and

(5)  facilitated visitation between the mother and the children.

Appellant argues the findings were not sufficiently specific because the findings "refer[red] to the parents generically as a single entity." He further contends that the trial court does "not identify the issues or state the type of services referred for each parent," and does "not specifically describe the continuing danger posed by each parent that prevented the return of the child[ren] at the time of trial."

Our sister courts have accurately observed that the plain language of subsections (f) and (g) do not prescribe a minimum number of efforts the trial court must list in its findings, nor the degree of specificity required. *See In re M.B.*, No. 14-25-00418-CV, 2025 WL 3275376, at *7 (Tex. App.—Houston [14th Dist.] Nov. 25, 2025, no pet.); *In re Y.K.*, 722 S.W.3d 273, 280–82 (Tex. App.—Fort Worth 2025, no pet.). Similarly, "[t]here is nothing in subsection (g) which requires the trial court to make specific findings as to the continuing danger in the home." *M.B.*, 2025 WL 3275376, at *7. With respect to orders that terminate the parental rights of multiple parents, the statute does not expressly require individualized findings of the Department's efforts as to each parent. *See* FAM. § 161.001(f), (g). Instead, subsection (f) focuses on a continuing danger remaining *in the children's home* that prevents the children's return to the parent, and subsection (g) focuses on the reasonable efforts the Department made to return the children *to the children's home*. *Id.* We, in turn, decline to impose a higher standard of detail or particularity than

the statutorily required specificity regarding the Department's efforts to reunify the family. *See Y.K.*, 722 S.W.3d at 281 n.14. Given the paramount consideration of the child's best interest in termination proceedings, even "superficially generic" findings are sufficiently specific so long as they are supported by the evidence and accurately reflect the efforts made by the Department to return the child or children to the parent. *M.B.*, 2025 WL 3275376, at *8; *Y.K.*, 722 S.W.3d at 280–82 (trial court's findings complied with subsection (g) because they "clearly identified and described the efforts the Department made to return [the child] to her parents").

The Department's reunification efforts in this case included implementing service plans for both parents, facilitating services for Appellant during his incarceration, placing the children with Appellant's brother and sister-in-law until they decided that they could no longer care for the children, and maintaining consistent contact with Appellant. *See M.N.M.*, 708 S.W.3d at 329; *A.D. v. Tex. Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 714 (Tex. App.—Austin 2023, no pet.) (finding that the existence of a service plan, the caseworker's repeated attempts to communicate with the mother, and an attempt to initially place the child with a family member constituted reasonable efforts). That the trial court's findings refer to Appellant and the mother collectively as "the parents" is immaterial under the circumstances—the enumerated efforts in the order are considered reasonable under the law and are supported by the evidence. Consequently, the trial court's findings are sufficiently specific within the confines of subsections (f) and (g). *See M.B.*, 2025 WL 3275376, at *8–9; *D.F. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-25-00738-CV, 2026 WL 482451, at *9–10 (Tex. App.—Austin Feb. 20, 2026, pet. filed) (The trial court's findings "reflect[ed] evidence presented at trial regarding the efforts the Department made to return the children to their

16

home and [were] sufficiently specific to comply with what the plain language of the statute requires.").

Accordingly, we overrule Appellant's second issue.

*Trial Court's Determination of Indigency*

In his third issue, Appellant contends that the trial court abused its discretion by denying his request for court-appointed counsel.

"Parents face a complex and nuanced family-law system that is challenging to navigate without the guidance of counsel." *In re B.C.*, 592 S.W.3d 133, 137 (Tex. 2019) (per curiam). In a government-initiated termination proceeding, the trial court "shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination." FAM. § 107.013(a)(1). A parent must first file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure to obtain court-appointed counsel. *Id.* § 107.013(d); TEX. R. CIV. P. 145. The trial court "is required to appoint counsel under [Section 107.013(a)] only when an affidavit of indigence has actually been filed *and the trial court has determined the parent is truly indigent*." *B.C.*, 592 S.W.3d at 136 (emphasis added). The trial court may conduct a hearing during which it may consider additional evidence, including the parent's source of income, benefits paid in accordance with a federal, state, or local public assistance program, outstanding obligations, and the number and ages of the parent's dependents. *Id.* The parent seeking to establish indigence has the burden of proving by a preponderance of the evidence that he could not pay attorney's fees or costs associated with the suit. *In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at *9–10 (Tex. App.—Fort Worth June 13, 2019, pet. denied) (mem. op.); *In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at *20 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.).

17

We review the trial court's determination of indigency in a parental termination case for an abuse of discretion. *In re C.D.S.*, 172 S.W.3d 179, 184 (Tex. App.—Fort Worth 2005, no pet.); *G.S.*, 2014 WL 4699480, at *19–21. A trial court abuses its discretion if it acts without reference to any guiding rules or principles or in an arbitrary and unreasonable manner. *C.D.S.*, 172 S.W.3d at 184 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made." *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

The Department does not dispute that Appellant "respond[ed] in opposition to the termination" proceedings, nor that he properly filed an affidavit of indigence to trigger the process for the mandatory appointment of an attorney ad litem. *See B.C.*, 592 S.W.3d at 136. Rather, whether the trial court abused its discretion necessarily hinges on the meaning of indigency as used in Section 107.013. In particular, we must address an incarcerated parent's availability of and access to funds to hire *and retain* an attorney.

Given the fundamental liberty interest at stake, we strictly construe the involuntary termination statutes in favor of the parent. *E.C.R.*, 402 S.W.3d at 240 & n.1 (citing *Holick v. Smith*, 685 S.W.3d 18, 21 (Tex. 1985)). While Section 107.013 does not define "indigent," Texas courts have determined that an indigent parent is "a person who does not have the resources, nor is able to obtain the resources, to hire *and retain* an attorney for representation in the termination case." *C.D.S.*, 172 S.W.3d at 185 (emphasis added); *G.S.*, 2014 WL 4699480, at *20. The 2016 comment to Rule 145 of the Texas Rules of Civil Procedure sheds additional light on the issue:

> The issue is not merely whether a person can pay costs, but whether the person can afford to pay costs. A person may have sufficient cash on

hand to pay filing fees, but the person cannot afford the fees if paying them would preclude the person from paying for basic essentials, like housing or food.

TEX. R. CIV. P. 145, cmt. 2016.

In the present case, on November 7, 2024, the trial court coordinator sent Appellant the scheduling order and a letter instructing him to complete the enclosed statement of indigency to request a court-appointed attorney. The trial court received Appellant's request on November 13, which it denied the same day without a hearing. According to Appellant's sworn statement of indigency, he received $5,400 monthly from the Department of Veterans Affairs (VA) for his military pension and disability. He listed four dependents and monthly expenses of $4,000. Appellant also indicated that he received federal Supplemental Security Income (SSI).

In compliance with the instructions on the form, Appellant attached a letter with additional supporting facts for the trial court to consider. Therein, he added that he was "not sure exactly how long [his] checks [would] pay out." And irrespective of the amount sent by the VA, he could not access his funds from jail. Appellant explained that the mother may have continued receiving his monthly checks, but he was prohibited from contacting her.

First, Appellant's statement that he received SSI—"a means-tested government entitlement program"—is evidence of his inability to afford payment of costs. *See* TEX. R. CIV. P. 145(a), (d)(1); *Strickland v. iHeartMedia, Inc.*, 668 S.W.3d 34, 37–38 & n.5 (Tex. App.—San Antonio 2022, pet. denied) (appellant's sworn statement that "include[d] checkmarks to indicate that [he] 'receive[s] . . . Food stamps/SNAP'" constituted prima facie evidence of inability to pay costs under Rule 145(d)(1)). Additionally, Appellant's sworn statement is corroborated by the Department's original petition; attached in support was a copy

of the Magistrate's Order for Emergency Protection (EPO) issued on September 30 that prohibited Appellant from communicating directly or indirectly with the mother or the children. *See* TEX. CODE CRIM. PROC. ANN. art. 17.292 (West Supp. 2025) (permitting a magistrate to issue an emergency protective order after a person's arrest for an offense involving family violence).

Logically, inaccessible funds are functionally nonexistent. In a related context, courts have considered an incarcerated parent's ability to pay child support in reviewing termination of parental rights pursuant to Section 161.001(b)(1)(F). *See* FAM. § 161.001(b)(1)(F) (failure to support the child in accordance with the parent's ability); *In re J.G.S.*, 574 S.W.3d 101, 117–18 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). For instance, in *J.G.S.*, the First Court of Appeals reviewed whether the Department proved that the father had an ability to pay child support during the statutory period. 574 S.W.3d at 117–18. The father testified at trial "that the military has held his pay since the beginning of his confinement," so he "had no access to income" for the period subject to subsection (F). *Id.* at 118. The court found the evidence insufficient to establish that the father had the ability to pay support as required under subsection (F). *Id.* at 118.

Based on Appellant's uncontested affidavit of indigency, he had no access to his military benefits, SSI, or other assets to hire an attorney. He therefore established that he was indigent at the time of his request and entitled to court-appointed counsel. *See* FAM. § 107.013. Considering the uncontradicted evidence before the trial court at the time the determination was made, we conclude that it abused its discretion by denying Appellant's request for court-appointed counsel. The complete failure of a trial court to appoint counsel for indigent parents is reversible error. *In re J.F.*, 589 S.W.3d 325, 334 (Tex. App.—Amarillo 2019, no pet.); *In re A.V.M.*, No. 13-12-

00684-CV, 2013 WL 1932887, at *7 (Tex. App.—Corpus Christi–Edinburg May 9, 2013, pet. denied) (mem. op.).

Accordingly, we sustain Appellant's third issue. We therefore reverse the portion of the trial court's order terminating Appellant's parental rights and remand that portion of the cause for a new trial.

*This Court's Ruling*

We reverse the order of the trial court insofar as it terminated the parental rights of Appellant to G.S.S. and S.D.S., and remand this cause to the trial court for further proceedings consistent with this opinion.[3] *See* TEX. R. APP. P. 44.1(b).

Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).


JOHN M. BAILEY
CHIEF JUSTICE


May 14, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[3]Our holding does not alter or affect the trial court's appointment of the Department as the children's managing conservator. *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

21